**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

JI GUO CHEN,

                       Plaintiff,                       **FINDINGS OF FACT AND**
   -against-                                           **CONCLUSIONS OF LAW**

GLOW ASIAN FOOD, INC.                        **19-CV-630 (ST)**
      d/b/a Glow Thai & Japanese,
QIN HSU
      a/k/a Amy Hsu
      a/k/a Amy Doe, and
"JOHN" GAO
      a/k/a Tom Gao

                    Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

        On January 1, 2019, Ji Guo Chen ("Plaintiff") brought this action against Glow Asian Food, Inc., his former employer, Qin Hsu, owner and operator Glow Asian Food, and John Gao, Plaintiff's direct supervisor (each, a "Defendant" and collectively "Defendants"). Plaintiff alleged failure to provide wage notices and wage statements, failure to pay overtime, and failure to pay "spread-of-hours" time where Plaintiff worked more than ten hours in a single day in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

        A bench trial was held on June 29, 2021 before Judge Tomlinson. The decision in this case was subsequently transferred to this Court. After reviewing the trial transcript, joint pre-trial order, and post-trial briefing, the Courts issues the following findings of fact and finds Defendant liable for violations of both the FLSA and NYLL.

## BACKGROUND

**I.     Findings of Fact**

Prior to trial, the parties stipulated to certain facts in the Joint Pre-Trial Order. Those facts are as follows:

1. Qin Hsu and Amy "Doe" are the same person.

2. Throughout the period relevant to this action, Glow Asian Food, Inc. operated a Thai and Japanese restaurant doing business as "Glow Thai & Japanese" at 214 Jericho Turnpike, Floral Park, NY 11001, in the County of Nassau.

3. During the period relevant to this action, Glow Asian Food, Inc. d/b/a Glow Thai & Japanese had gross annual revenue in excess of $500,000.00.

4. During the period relevant to this action, Glow Asian Food, Inc. d/b/a Glow Thai & Japanese purchased and handled goods moved in interstate commerce.

5. Throughout the period relevant to this action, Qin Hsu a/k/a Amy Hsu was the sole shareholder of Glow Asian Food, Inc. d/b/a Glow Thai & Japanese.

6. Throughout the period relevant to this action, Qin Hsu a/k/a Amy Hsu was the alcoholic beverage control principal of Glow Asian Food, Inc. d/b/a Glow Thai & Japanese, had the power to hire and fire employees of Glow Asian Food, Inc. d/b/a Glow Thai & Japanese, supervised and controlled employee work schedules and conditions of employment at Glow Asian Food, Inc. d/b/a Glow Thai & Japanese, determined employees' rates and methods of payment at Glow Asian Food, Inc. d/b/a Glow Thai & Japanese, and maintained employee records for Glow Asian Food, Inc. d/b/a Glow Thai & Japanese.

7. Throughout the period relevant to this action, Qin Hsu a/k/a Amy Hsu knew that federal and New York State labor laws set a minimum wage, that federal and New York State labor laws mandated payment of one and one-half times an employee's regular rate for time worked in excess of forty (40) hours per week, and that New York State labor laws mandated payment of one (1) hour's pay at the New York minimum wage for each day when an employee's spread of time exceeded ten (10) hours.

8. Throughout the period relevant to this action, Tom Gao a/k/a "John" Gao was the head chef at Glow Thai & Japanese supervising two other employees including Ji Guo Chen, who from time to time gave employees, including Ji Guo Chen, training, tasks to do and instructions on how to do tasks.

9. Ji Guo Chen worked as an "oil wok," a kind of cook, at Glow Thai & Japanese from on or about July 20, 2017 through on or about December 21, 2018.

10. Throughout the period relevant to this action, the work performed by Ji Guo Chen was directly essential to Glow Thai & Japanese.

11. Throughout the period relevant to this action, Ji Guo Chen worked: from 11:00 hours through 22:00 hours on Mondays, Tuesdays, and Thursdays; from 11:00 hours through 23:00 hours on Fridays; from 11:45 hours through 23:00 hours on Saturdays; and from 12:45 hours through 22:00 hours on Sundays—and did not work on Wednesdays.

12. Throughout the period relevant to this action, Ji Guo Chen did not have a regularly-scheduled time set aside to eat lunch.

13. Throughout the period relevant to this action, Ji Guo Chen's working time was not recorded, and Defendants did not keep and maintain records of Ji Guo Chen's working time.

14. From on or about July 20, 2017 through on or about August 29, 2017, Ji Guo Chen was paid a flat $650.00 per week; from on or about August 30, 2017 through on or about October 19, 2017, Ji Guo Chen was paid a flat $675.00 per week; from on or about October 20, 2017 through on or about July 19, 2018, Ji Guo Chen was paid a flat $725.00 per week; from on or about July 20, 2018 through on or about December 21, 2018, Ji Guo Chen was paid a flat $750.00 per week.

15. Throughout the period relevant to this action, Qin Hsu a/k/a Amy Hsu recorded Jin Guo Chen's compensation in a notebook, which is not in her possession.

16. At no point during the period relevant to this action, whether at his time of hiring or thereafter, was Ji Guo Chen furnished with a written wage notice, in English and Chinese, his primary language, stating: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

17. Throughout the period relevant to this action, Ji Guo Chen was not furnished wage statements with each payment of wages, listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number

4

of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. During the period relevant to the action, Qin Hsu a/k/a Amy Hsu received New York Department of Labor wage notice posters, in English, from Glow Asian Food, Inc. d/b/a Glow Thai & Japanese's accountant. *See* Joint Pre-Trial Order, 3-4, ECF No. 30.

The stipulated facts are nearly sufficient to decide this case in its entirety. In addition to the facts detailed above, this Court also finds that Defendant Tom Gao had the authority to fire employees under his supervision and used that authority to fire Plaintiff on or about December 21, 2018.

## II.  Procedural History

Plaintiff commenced this action on January 21, 2019. *See* Pl. Compl., ECF No. 1. Discovery was completed as of August 31, 2020. Docket Order dated Jul. 31, 2020. After consenting to the jurisdiction of a magistrate judge, a one-day bench trial was held before Judge Tomlinson on June 29, 2021. *See* ECF No. 40. The parties were directed to file post-trial proposed conclusions of law. Plaintiff filed his post-trial briefing on August 20, 2021. Pl. Post-Trial Br., ECF No. 47. Defendant failed to file any briefing. This case was subsequently transferred to this Court for a memorandum and order. *See* Docket Entry dated Nov. 1, 2021.

Defendants filed multiple letters in lieu of post-trial proposed conclusions of law. *See, e.g,* ECF Nos 41, 49, 51. In each, Defendants claimed that they were unable to meaningfully file conclusions of law in this case because Defendants' consent to the hours Plaintiff worked was obtained via fraud committed by Plaintiff's counsel. *See* Def. 2d Post-Trial Letter at 1, ECF No. 49. According to Defendants, Plaintiff's counsel called on the eve of filing the Joint Pre-Trial

Order asking Defendants' counsel to stipulate to the hours Plaintiff worked. *Id* at 2. Plaintiff's counsel stated the stipulation was based on previous testimony by individual Defendant Qin Hsu. *Id* at 3. Defendants' counsel agreed to the stipulation but now claims that Qin Hsu never testified to such a fact. *Id*. Counsel's basis for this claim is that he has not received a copy of Qin Hsu's deposition transcript. *Id*.

On the eve of trial, Defendants attempted to add a witness that had not been disclosed in Defendants' Rule 26 disclosures in order to testify as to the hours Plaintiff worked, despite the stipulation. Def. Pre-Trial Opp. Letter at 1, ECF No 38. The Court declined to allow the witness to testify as Defendants could not show a substantial justification for why the witness could not have been disclosed earlier and the hours Plaintiff worked had already been stipulated. Trial Tr. at 11:13, 12:2, ECF No. 47-1. At the close of trial, Judge Tomlinson reminded the parties that post-trial briefing was limited to each party's proposed conclusions of law and that the parties should refrain from arguing against the stipulated facts. *Id* at 92:25-93:3.

Yet, Defendants refreshed this argument in a post-trial letter asserting that Plaintiff's counsel had deceived Defendants about the contents of Qin Hsu's testimony and was now withholding the deposition transcript. Def. Post-Trial Letter at 2, ECF No 41. In a post-trial order Judge Tomlinson determined that no formal deposition transcript had been made and so there was no transcript to turn over, but instructed Plaintiff's counsel to turn over the video recording of the deposition to Defendants. *See* 2d Post-Trial Order, ECF No. 46. Defendants' counsel acknowledged receipt of this video in a later filing. Def. Letter Mot. at 1, ECF No. 48.

Despite obtaining the video recording, Defendants filed two more post-trial letters claiming fraud and demanding a deposition transcript. See ECF Nos. 49, 51. Notably, Defendants' counsel failed to explain anywhere in these letters why the provided video was

insufficient to either confirm or refute what Qin Hsu testified to. This Court also denied Defendants' request to call the witness Judge Tomlinson had refused to let testify at trial finding no authority or sufficient reason to do so. *See* Docket Order dated June 6, 2022, ECF No. 53. Given Defendants failure to provide post-trial briefing, the Court now proceeds to issue its conclusions of law based on the Joint Pre-Trial Order, Trial Transcript, Plaintiff's Post-Trial Briefing, and Defendants' Post-Trial filings.

## CONCLUSIONS OF LAW

### I.     Defendants' Post-Trial Filings

Before turning to the elements of Plaintiff's claim, the Court first addresses Defendants' post-trial filings. The Court returns to these filings now as Defendants' allegations of fraud have yet to be fully addressed. Having reviewed the record, the Court finds no basis to conclude Plaintiff's counsel committed fraud in this case.

Ordinarily, parties are bound by pre-trial stipulation of facts, and a court should not "disturb a valid stipulation absent a showing of good cause such as fraud, collusion, mistake or duress, or where the agreement is unconscionable or contrary to public policy, or the text of the agreement suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010) (internal quotations omitted, alterations incorporated). Defendants' fraud claim requires:

> clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering the presentation of the opposing party's claim or defense . . . . The essence of fraud on the court is when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *Passologix, Inc. v. 2FA Technology, LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010).

Defendants cannot meet this standard.

7

In response to Defendants' claim, Plaintiff asserts that the stipulation arises out of the pleadings in this case, not Qin Hsu's deposition. Plaintiff alleged the same hours in his complaint as listed in item 11 of the stipulations. *See* Pl. Complaint ¶ 30, ECF No. 1. Defendants admitted to the spread of hours alleged but denied "the accuracy of calculated total hours worked per week." Def. Answer ¶ 30, ECF No. 13. Defendants have never specified exactly how they admit to the hours plaintiff was scheduled to work, yet deny the total calculation, but the Court reads Defendants' argument to assert Plaintiff's hours included a one-hour unpaid lunch. The parties have stipulated, and have not subsequently contested, that Plaintiff did not have a scheduled lunch time. While this is not necessarily conclusive that Plaintiff was unable to take any lunch breaks at the restaurant, the facts as admitted to in the pleadings reasonably support a conclusion that Plaintiff did indeed, as stipulated, work 65.5 hours per week. Such a reasonable basis for a stipulation cannot be considered the type of intentional and repeated lying needed to demonstrate a claim for fraud.

Furthermore, while Defendants continue to demand a copy of Qin Hsu's deposition transcript, they fail to explain why the video previously provided by Plaintiff and acknowledged by Defendants is insufficient to either support or refute their claims of fraud. Curiously, all mention of this video seems to have disappeared from Defendants letters since Defendants acknowledged receipt. *See* Def. Letter Motion, ECF No. 48. Instead, Defendants maintain that the transcript will show Plaintiff's alleged fraud without presenting any evidence to that effect.

Lastly, Defendants provide citations to previous cases in which Plaintiff's law firm has been admonished—and in one instance sanctioned—for providing inconsistent statements and testimony before the Eastern and Southern Districts of New York. While the Court does find such conduct troubling, pointing to other incidents of sloppy or outright unethical lawyering in

8

other cases to raise the specter of misconduct in this case is simply insufficient, on its own, to meet the clear and convincing evidence standard needed to show fraud. *See Passologix, Inc.*, 708 F. Supp. 2d at 393. Accordingly, this Court concludes that Defendants claim of fraud fails and declines to disturb the stipulations agreed to prior to trial.

## II. Plaintiff's Claims.

### a. Plaintiff's Employment is Covered by both the FLSA and NYLL.

The parties have stipulated that Plaintiff was an employee of all Defendants, and that Defendant Glow Asian Food, Inc. was an enterprise engaged in commerce within the meaning of the FLSA. *See* Joint Pre-Trial Order at 4-5, ECF No. 30. Therefore, it has been agreed to that Plaintiff's employment is covered by the FLSA.

These stipulations are also sufficient to bring Plaintiff's employment under the NYLL, which defines "employer" broadly. *See* N.Y. Lab. Law §§ 2(6) (in definitions to Article 1: Short Title and Definitions: "'Employer' means the person employing any such . . . laborer, whether the owner, proprietor, agent, superintendent, foreman or other subordinate."), 190(3) (in definitions to Article 6: Payment of Wages: "'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). Furthermore, the central question in determining whether an employer-employee relationship exists under the NYLL is "whether the alleged employer possessed the power to control the workers in question." *Yu Y. Ho v. Sim Enters., Inc.*, No. 11-CV-2855 (PKC), 2014 WL 1998237, at *11 (S.D.N.Y. May 14, 2014). Further stipulations by the parties make this control clear. The parties have agreed that Defendant Qin Hsu "supervised and controlled employee work schedules, . . . determined employees' rates and methods of payment, . . . and maintained records . . . ." *See* Joint Pre-Trial Order at 3, ECF No. 30. The

parties have also agreed that Defendant Tom Gao was Plaintiff's direct supervisor. *Id*. Lastly, this Court has found that Tom Gao also had the authority to fire Plaintiff and indeed exercised that authority. This is sufficient to demonstrate employment under the NYLL.

### b. Defendants Failed to Pay Plaintiff for Overtime and Spread Hours.

Both the FLSA and NYLL mandate that employees be paid at a rate of one and one-half times their typical rate of pay for any hours worked in a week above 40. *Perez Garcia v. Hirakegoma*, No. 17-cv-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020). The NYLL further requires an additional "spread-of-hours" compensation of one hour at the basic minimum wage rate for any days where an employee worked a span of time longer than ten hours in a single day, inclusive of unpaid mealtime and break time. *See id* at *7.

It is uncontested that Plaintiff regularly worked more than 40 hours a week. However, Defendants maintain that Plaintiff's weekly rate of pay was inclusive of overtime. Trial Tr. at 69:23, ECF No. 47-1. It is permissible for an employer and employee to stipulate to a weekly wage inclusive of regular overtime compensation for a workweek in excess of 40 hours. *Adams v. Dep't of Juvenile Justice of City of New York*, 143 F.3d 61, 67 (2d Cir. 1998). However, such an arrangement only properly compensates an employee for owed overtime to the extent that there is an "explicit agreement" between the employer and employee establishing that both understand the weekly salary to include compensation for overtime hours at the premium rate. *See Guallpa v. N.Y. Pro Signs Inc.*, No. 11-CV-3133 (LGS) (FM), 2014 WL 2200393, at *3 (S.D.N.Y. May 27, 2014), adopted by *Guallpa v. NY Pro Signs Inc.*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014) (collecting cases). Thus, "[t]here is a rebuttable presumption that a weekly salary covers 40 hours; the employer can rebut the presumption by showing an employer-employee agreement that the salary covers a different number of hours." *Giles v. City of New*

*York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999). This presumption applies to both the FLSA and NYLL. *Perez Garcia*, 2020 WL 1130765 at *8.

Defendants have failed to rebut this presumption. Plaintiff testified that while the employment agency through which he secured the job told Plaintiff his weekly rate of pay and where and when he should meet the shuttle he took to the restaurant, he was not told what his hours would be or when he would be driven home each day. Pl. Post-Trial Br. at 5, ECF No. 47. Plaintiff was never formally told what his work schedule was, instead he had to determine it for himself based on his arrival and departure times during the early weeks of his employment. *Id* at 5-6. And Plaintiff was never provided a notice or statement of his wage. Joint Pre-Trial Order at 4, ECF No. 30. Defendants offer no evidence to refute these facts or establish an explicit agreement. At trial, Qin Hsu admitted that she did not track Plaintiff's hours and only knew his schedule because everyone in the restaurant worked the same hours. Trial Tr. at 68:14-20, ECF No. 47-1. There is therefore no evidence of an explicit employment agreement showing that Plaintiff's weekly rate of pay included overtime pay. Furthermore, Defendant admitted at trial that Plaintiff's pay did not include spread-of-hours pay. *Id* at 87:25-88:5. Thus, the Court concludes that Plaintiff's pay covered only his standard 40 hours of work and Defendants are liable for unpaid overtime and spread-of-hours pay.

   c.  **Failure To Provide Wage Notices and Wage Statements.**

NYLL §§ 195(1) and (3) require employers to provide employees a notice of their wages upon hiring and statements of wages with each payment of wages, respectively. Defendants have stipulated that they failed to provide such notice or statements. *See* Joint Pre-Trial Order at 4, ECF No. 30; Trial Tr. at 11:13, 12:2, ECF No. 47-1.  As such, Defendants violated these provisions of the NYLL.

### d. Damages

#### i. Unpaid Wages and Liquidated Damages

As detailed above, Defendants are liable to Plaintiff for unpaid overtime and spread-of-hours pay for the duration of his employment. Plaintiff also seeks liquidated damages. Both the FLSA and NYLL allow for the recovery of unpaid overtime and liquidated damages, however a plaintiff may only recover such damages once, under whichever statute will provide the greatest relief. *See Perez Garcia*, 2020 WL 1130765 at *8-9 (citing *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016); *Gonzalez Mercedes v. Tito Transmission Corp.*, No. 15 Civ. 1170 (CM) (DF), 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018)). Because the NYLL allows for spread-of-hours pay and prejudgment interest in addition to liquidated damages, while the FLSA does not, the NYLL will provide Plaintiff with the greatest relief.

Pursuant to NYLL § 198(1-a):

> [i]n any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

Defendants have failed to demonstrate that they acted in good faith and so Plaintiffs are entitled to liquidated damages as well. To demonstrate good faith, an "employer must take active steps to ascertain the dictates of the [applicable law] and then act to comply with them." *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 142 (2d Cir 1999). An employer bears the burden of establishing good faith, and because double damages are "the norm and single damages the exception," the burden is a difficult one to meet. *Id*. This Circuit has recognized that a failure to comply with record keeping requirements is sufficient to find an employer has failed to act in good faith. *Ramirez v. Lin*, 830 Fed. App'x 672, 675 (2d Cir. 2020). Here, the stipulated facts go

12

beyond the "minimal and wholly unreliable records" at issue in *Ramirez* as the Defendants admit records of Plaintiff's employment are almost nonexistent. *Id*. Defendants did not record Plaintiff's working hours, did not provide wage statements or notices, and while Defendants did keep records of Plaintiff's compensation, the accuracy and substantiality of that log cannot be determined as Defendants no longer possess it. Joint Pre-Trial Order at 4, ECF No. 30. Defendants have therefore failed to demonstrate good faith and Plaintiff is entitled to liquidated damages.

The Court makes the following findings as to the amount of unpaid overtime, spread-of-hours pay, and liquidated damages owed to Plaintiff.

**Table 1: Unpaid Overtime Hours**

| **Time Period** | **Number of Weeks** | **Rate of Pay**[1] | **Overtime Hours Worked**[2] | **Overtime Pay Owed**[3] |
|---|---|---|---|---|
| 7/20/2017-8/29/2017 | 5.9 | $24.38 | 25.5 | $3,667.97 |
| 8/30/2017-10/19/2017 | 7.3 | $25.31 | 25.5 | $4,711.46 |
| 10/20/2017-7/19/2018 | 39 | $27.19 | 25.5 | $27,040.46 |
| 7/20/2018-12/21/2018 | 22.3 | $28.13 | 25.5 | $15,852.66 |

---

[1] Calculated by dividing Plaintiff's weekly pay by 40 hours worked, then multiplying that base rate by 1.5. Joint Pre-Trial Order, 4, ECF No. 30.
[2] Based on the stipulation that Plaintiff worked 65.5 hours per week. 65.5 – 40 = 25.5. *Id*.
[3] Calculation: (Overtime Hours Worked)*(Rate of Pay/Hour)*(Number of Weeks) = Overtime Pay Owed.

Table 2: Unpaid Spread-of-Hours Pay

| Time Period | Number of Weeks | Number of Spread Hours[4] | Minimum Wage[5] | Spread-of-Hours Pay Owed[6] |
|---|---|---|---|---|
| 7/20/2017-12/30/2017 | 23.4 | 117 | $10.00 | $1,170.00 |
| 12/31/2017-12/21/2018 | 50.9 | 254.5 | $11.00 | $2,799.50 |

Totaling the amount of unpaid wages for each relevant time period yields a total of $55,242.04[7] owed to Plaintiff. As the NYLL calls for an additional 100% of any unpaid wages where an employer has failed to act in good faith, Plaintiff shall also be awarded an additional $55,242.04 in liquidated damages.

### ii. Statutory Damages

In addition, the NYLL §§ 198(1-b) and (1-d) each provide for an award of $5000 in statutory damages to an employee where the employer failed to provide a wage notice or wage statements pursuant to NYLL §§ 195(1) and (3). The Court awards Plaintiff an additional amount of $10,000 for these violations.

### iii. Prejudgment Interest

---

[4] Based on stipulation that Plaintiff worked 5 days a week where his spread-of-hours was greater than 10, multiplied by the number of weeks in each period. Joint Pre-Trial Order at 4, ECF No. 30.
[5] Based on the parties' stipulation of law. *Id* at 5.
[6] Calculation: (Number of Spread Hours Worked)*(Minimum Wage) = Spread-of-Hours Pay Owed.
[7] The Court's calculation of damages differs marginally from Plaintiff's. *See* Pl. Post-Trial Br. at, ECF No. 47 (listing total wages owed as approximately $20 more than the Court's calculation). While the Court cannot determine the source of the difference in totals, the Court is satisfied with the accuracy of its own calculation and proceeds accordingly.

Plaintiff also seeks prejudgment interest. The NYLL allows a prevailing plaintiff to recover both liquidated damages and prejudgment interest on unpaid wages.[8] *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14-CV-7850 (VEC) (DF), 2016 WL 8650464, at *11 (S.D.N.Y. Nov. 7, 2016) (citing N.Y. Lab. Law 198(1-a)), *adopted by* 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017). The Court has discretion to determine a reasonable intermediate date during a prevailing plaintiff's term of employment and calculate prejudgment at a rate of 9% annually up to the date of the entry of judgment. *Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493, at *35-36 (S.D.N.Y. June 9, 2016) (citing N.Y. C.P.L.R. §§ 5001(b), 5004). Plaintiff was employed by Defendants for 520 days, and Plaintiff offers 260, the exact midpoint, as a proposed intermediate date. Pl. Post-Trial Br. at 5, ECF No. 47. Courts in this Circuit have often used the midpoint of a term of employment within the limitations period as the intermediate date and so this Court accepts Plaintiff's offered date. *See Gamero v. Koodo Sushi Corp*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017). The date 260 days into Plaintiff's term of employment is April 5, 2018. Prejudgment interest at an annual rate of 9% from April 5, 2018 to the date of this judgment amounts to $24,802.75 in pre-judgment interest.

## CONCLUSION

As discussed above, this Court finds Defendants liable for their failure to pay Plaintiff overtime and spread-of-hours pay and for failing to provide wage statements or notices. Plaintiff is hereby awarded damages in the following amounts:

    a. $55,242.04 in unpaid overtime and spread-of-hours pay;

    b. $55,242.04 in liquidated damages;

---

[8] A plaintiff may not, however, recover prejudgment interest on any liquidated damages awarded. *Mejia v. East Manor USA Inc.*, No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013) (citation omitted), *adopted by* 2013 WL 2152176 (May 17, 2013).

      c. $10,000 in statutory damages for failing to provide wage statements or notices; and

      d. $24,802.75 in prejudgment interest.

Plaintiff is therefore awarded a total of $145,286.83 in damages.

**SO ORDERED.**

                                                                    /s/ Steven Tiscione
                                                                    Steven L. Tiscione
                                                                    United States Magistrate Judge
                                                                    Eastern District of New York

Dated: Central Islip, New York
           March 23, 2023